1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SAURABH JAIN, et al.,

          Plaintiffs,

   v.

TRACY RENAUD,

          Defendant.

Case No.  21-cv-03115-VKD

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Re: Dkt. No. 14

Plaintiffs are ten foreign nationals who applied for immigrant visas under the immigrant investor visa program known as "EB-5."  8 U.S.C. § 1153(b)(5).  They allege that the U.S. Citizenship and Immigration Services ("USCIS") has unreasonably delayed adjudication of their Form I-526 petitions and seek judicial review of the agency's action under the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1).[1]  Dkt. No. 1 ¶¶ 195-200.  Plaintiffs now move the Court for a preliminary injunction mandating that USCIS adjudicate plaintiffs' visa petitions before June 30, 2021, the date Congressional authority for the program under which plaintiffs applied for their EB-5 visas is set to expire.  Dkt. No. 14 at 3.  Defendant Tracy Renaud, the senior official performing the duties of the Director of USCIS, opposes plaintiffs' motion for preliminary injunctive relief.  The Court held a hearing on the motion on June 14, 2021.  For the reasons stated below, plaintiffs' motion is denied.

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 18, 19.

United States District Court
Northern District of California

# I.     BACKGROUND

## A.     EB-5 Immigrant Investor Visa Program

The EB-5 immigrant investor visa program provides a path for immigrant investors and their family members to obtain lawful permanent residence in the United States if they invest in new commercial enterprises ("NCEs") that create full-time employment for at least 10 U.S. workers.  8 U.S.C. § 1153(b)(5).  If a non-citizen investor chooses to invest in an NCE in a "targeted employment area,"[2] he or she must invest at least $500,000.  8 U.S.C. § 1153(b)(5)(C).

Currently, most EB-5 petitions involve investments in NCEs associated with a "Regional Center."  Dkt. No. 27-3, Ex. J, Congressional Research Service Report on the EB-5 Immigrant Investor Visa (updated January 26, 2021) ("CRS Report"), at 7.  Multiple investors may invest in the same Regional Center NCE, and they may satisfy the employment creation requirement by establishing that the investment will create a sufficient number of jobs indirectly, as demonstrated by accepted, reasonable methodologies.[3]  See 8 C.F.R. § 204.6(m)(7)(ii).

The Regional Center NCE program is temporary, and its continuation requires reauthorization by Congress.  Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1993, Pub. L. 102-395, title VI, § 610(b), 106 Stat. 1828, 1874 (1992); Pub. L. 102-395, title VI, § 610, 106 Stat. 1828 (1992), as amended by Pub. L. 112-176, § 1, 126 Stat. 1325 (2012).  Since its advent in 1992, the program has been reauthorized at least six times.  See CRS Report at 5 n.27, 6.  The present authorization for the Regional Center NCE Program will expire on June 30, 2021.  Consolidated Appropriations Act of 2021, Pub. L. 116-120, div. O, title I, § 104, 134 Stat. 1182, 2148 (substituting "June 30, 2021" for September 30, 2015" in § 610(b) of Pub. L. 102-395).

---

[2] "Targeted employment area" is defined as "a rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate)."  8 U.S.C. § 1153(b)(5)(B)(ii).

[3] By contrast, a non-citizen investor relying on a "Direct" EB-5 petition must show that his or her NCE investment directly results in the creation of full-time employment of at least 10 U.S. workers by demonstrating that the NCE directly hired at least 10 full-time employees.  8 U.S.C. § 1153(b)(5)(A)(ii).

**B.      The EB-5 Petition Process**

The first step in the EB-5 petition process is the filing of a USCIS Form I-526 and payment of the $3,675 filing fee.  CRS Report at 9.  The petitioner must show that he or she meets all of the statutory and regulatory requirements of the program, in addition to the investment amount and employment creation requirements.  8 C.F.R. § 204.6(m)(1), (7); 58 Fed. Reg. 44606, 44607.

If USCIS approves the Form I-526, the petitioner may apply to adjust his or her status to a two-year conditional permanent resident status.  CRS Report at 10.  In addition, the petitioner becomes entitled to certain interim benefits.  *Id.* at 11.

At the final step in the process, the petitioner files a Form I-829 petition in which the petitioner must show that he or she has complied with the requirements of the EB-5 program and is otherwise eligible for removal of the conditions attached to the petitioner's status.  *Id.*  If the petition is successful, the USCIS removes the conditions, and the petitioner obtains permanent resident status. *Id.* at 11–12.

**C.      USCIS's "Visa Availability" Review Process**

Until recently, USCIS reviewed and adjudicated Form I-526 petitions on a "first in, first out" basis—i.e., the petitions were processed in the order of filing.  Dkt. No. 27-2, Ex. E, at 1-2. In the spring of 2020, USCIS announced the adoption of a "visa availability" approach to processing these petitions.  Dkt. No. 27-2, Ex. D ("USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory"), at 1.  This approach takes into account the availability of visas for an immigrant's country of chargeability (typically, the country of birth) and gives highest priority to petitions for which visas are or soon will be available.[4]  *See id.*  After considering the availability of visas, USCIS considers several other factors, including whether the relevant NCE has already been reviewed and when the petition was filed (i.e., "first in, first out").  Dkt. No. 27-2, Ex. E ("Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach"), at A1, A14.

---

[4] The Immigration and Nationality Act places limits on the number of employment-based visas allocated to immigrants from each country of chargeability.  8 U.S.C. § 1152.

United States District Court
Northern District of California

### D.    Plaintiffs' Allegations

In this case, plaintiffs are nationals of several countries, including India, the Czech Republic, Afghanistan, Canada, and the United Kingdom.  *See* Dkt. No. 1-1 (plaintiffs' declarations).  Each filed a Form I-526 petition in 2019 as part of the EB-5 Regional Center program and invested at least $500,000 in an NCE in an effort to qualify for a visa.  Dkt. No. 1 ¶¶ 90-92 (Jain), 101-03 (Saraf), 112-14 (Bleach), 123-25 (Khan), 134-36 (Nwankor), 144-46 (Shahand), 153-55 (Arora), 162-64 (Donocik), 172-74 (Bhandari), 183-85 (Grundleger).  Plaintiffs Jain, Saraf, Khan, Bhandari, and Grundleger currently reside in the United States in lawful nonimmigrant status.  *Id.* ¶¶ 96, 107, 129, 178, 189.  The remaining plaintiffs reside outside the United States.

At the time the complaint was filed, plaintiffs' Form I-526 petitions had been pending for between 17 months and 25 months.  *Id.* ¶¶ 91, 102, 113, 124, 135, 145, 154, 163, 173, 184. Plaintiffs allege that adjudication of their petitions has been delayed as part of a dramatic decrease in USCIS's processing of Form I-526 petitions.  *Id.* ¶¶ 48-55.  According to plaintiffs, USCIS completed adjudication of over 12,000 petitions in FY 2017[5] and over 15,000 petitions in FY 2018, but adjudicated only 4,492 petitions in FY 2019 and only 3,421 petitions in FY 2020.  Dkt. No. 14 at 8–9.  Plaintiffs project that USCIS will complete adjudication of approximately 4,492 petitions in FY 2021.  *Id.* at 9.  Meanwhile, USCIS reported average processing times of 16.6 months for petitions adjudicated in FY 2017 but 31.2 months for petitions adjudicated in FY 2020. *Id.* at 10.  In April 2021, USCIS reported processing times for immigrant investors not born in mainland China ranging from a low of 30 months to a high of 54 months.  Dkt. No. 1 ¶ 55.

Plaintiffs allege that, as evidenced by the pendency of their petitions and USCIS's own reporting of average processing times, USCIS has unreasonably delayed adjudication of Form I-526 petitions generally and their petitions in particular.  Dkt. No. 14 at 6–18.

## II.    LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*

---

[5] The fiscal year runs from October 1 of one year and ends on September 30 of the following year. Glossary Definition of "Fiscal year," U.S. Citizenship and Immigration Services, https://www.uscis.gov/tools/glossary (last visited Jun. 15, 2021).

*v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A plaintiff seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest.  *All. for the Wild Rockies*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter*, 555 U.S. at 20).  These factors are evaluated on a sliding scale, whereby a stronger showing on one factor may offset a weaker showing on another.  *Id.* at 1131–34.

"A mandatory injunction 'orders a responsible party to take action.'"  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)).  Such an order goes well beyond maintaining the status quo and is, therefore, particularly disfavored.  *Id.*  In general, "mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'"  *Id.* (quoting *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980)).

## III.    DISCUSSION

Plaintiffs seek a preliminary mandatory injunction ordering USCIS to adjudicate plaintiffs' Form I-526 visa petitions before June 30, 2021.  The APA requires an administrative agency to "conclude a matter" presented to it "within a reasonable time."  5 U.S.C. § 555(b).  A reviewing court may compel agency action that is "unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  Here, plaintiffs claim that USCIS has "unreasonably delayed" adjudication of their Form I-526 petitions, and that because Congressional authorization for the Regional Center NCE program will soon expire, a mandatory injunction is warranted.

The Court considers each of the *Winter* factors below.

### A.    Likelihood of Success on the Merits

As an initial matter, USCIS argues that plaintiffs are unlikely to succeed on the merits of their delay claim because their Form I-526 petitions have been pending for less than the average time it takes the agency to process other similarly situated petitioners' petitions.  Dkt. No. 27 at 10–11 (citing cases where posted processing times served as a useful guide as to whether the delays experienced by visa applicants were reasonable).  This argument is unpersuasive.  As

1    another judge in this district has observed, "depending on the grounds for the delays, even

2    processing times at the low end of the range could be unreasonable." *Raju v. Cuccinelli*, No. 20-

3    cv-01386-AGT, 2020 WL 4915773, at *3 (N.D. Cal. Aug. 14, 2020).  While USCIS's reported

4    processing ranges provide context for plaintiffs' claim of delay, the ranges do not necessarily

5    show that plaintiffs' wait times are reasonable—"[a]n unreasonable delay that applies to every

6    applicant is still unreasonable." *Id.* (citing *Camarena v. Cuccinelli*, No. 19-CV-5643, 2020 WL

7    550597, at *3 (N.D. Ill. Feb. 4, 2020)).

8         Ordinarily, courts in the Ninth Circuit consider the six factors set out in

9    *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"),

10   in evaluating whether agency action has been unreasonably delayed.  *Indep. Min. Co. v. Babitt*,

11   105 F.3d 502, 507 n.7 (9th Cir. 1997); *see also In re Nat. Resources Def. Council*, 956 F.3d 1134,

12   1138–39 (9th Cir. 2020) (applying the *TRAC* factors to determine whether the EPA had

13   unreasonably delayed its response to an administrative petition, such that a writ of mandamus[6] was

14   warranted).  The *TRAC* factors are: "(1) the time agencies take to make decisions must be

15   governed by a 'rule of reason'[;] (2) where Congress has provided a timetable or other indication

16   of the speed with which it expects the agency to proceed in the enabling statute, that statutory

17   scheme may supply content for this rule of reason[;] (3) delays that might be reasonable in the

18   sphere of economic regulation are less tolerable when human health and welfare are at stake[;] (4)

19   the court should consider the effect of expediting delayed action on agency activities of a higher or

20   competing priority[;] (5) the court should also take into account the nature and extent of the

21   interests prejudiced by the delay[;] and (6) the court need not 'find any impropriety lurking behind

22   agency lassitude in order to hold that agency action is unreasonably delayed.'" *Indep. Min. Co.*,

23   105 F.3d at 507 n.7 (citing *TRAC*, 750 F.2d at 80).

24              **1.    Rule of Reason**

25         The most important *TRAC* factor is the first factor, the "rule of reason."  *In re Nat.*

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

     [6] Courts treat claims challenging unreasonable agency delay under the Mandamus and Venue Act
     of 1962, 28 U.S.C. § 1361, identically to claims for relief under § 706 of the APA.  *Indep. Min.*
28   *Co. v. Babitt*, 105 F.3d at 507 (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221
     230 n.4 (1986)).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  *Resources Def. Council*, 956 F.3d at 1139.  Plaintiffs urge the Court to find that USCIS's "visa

2  availability" approach is not a "complete" rule of reason because USCIS has not identified a

3  "consistent rationale, workflow, or processing logic" for how it assigns Form I-526 petitions for

4  adjudication.  Dkt. No. 14 at 8.  The Court disagrees.  As plaintiffs acknowledge, USCIS describes

5  its visa availability approach as follows:  USCIS first identifies Form I-526 petitions for which a

6  visa is currently available.  Dkt. No. 27-2, Ex. E, at 1.  Then, "[w]orkflows are generally managed

7  in FIFO [first in, first out] order."  *Id.* at 4.  These workflows also factor in whether "[t]he

8  underlying project has been reviewed."  *Id.*  Plaintiffs argue that USCIS cannot consider both the

9  filing order of the petition and the status of the underlying project, arguing, "[e]ither USCIS

10  manages its inventory of 'current' Forms I-526 on a strict first in, first out basis *or* it prioritizes

11  Forms I-526 that relate to an NCE that has already been reviewed."  Dkt. No. 14 at 8.  But

12  plaintiffs cite no authority supporting their view that only a rigid rule of priority will suffice, and

13  that the agency is not permitted to consider multiple factors in deciding which petitions to consider

14  for adjudication.  Indeed, all of the district courts that have considered this question have

15  concluded that the visa availability approach satisfies the rule of reason.  *See* Order, *Nadhar v.*

16  *Renaud*, No. CV-21-00275-PHX-DLR, at *5 (D. Ariz. Jun. 11, 2021), Dkt. No. 33 (the USCIS

17  visa availability approach satisfies the first *TRAC* factor); *Desai v. USCIS*, No. 20-1005 (CKK),

18  2021 WL 1110737, at *5 (D.D.C. Mar. 22, 2021) (same); *Thakker v. Renaud*, No. 20-1133 (CKK),

19  2021 WL 1092269, at *6 (D.D.C. Mar. 22, 2021) (same); *Nohria v. Renaud*, No. 20-cv-2085,

20  2021 WL 950511, at *6 n.5 (D.D.C. Mar. 14, 2021) (same); *Palakaru v. Renaud*, No. 1:20-cv-

21  02065 (TNM), 2021 WL 674162 (D.D.C. Feb. 22, 2021) (a process that prioritizes I-526 petitions

22  for which visas are available, factors in whether the underlying project has been reviewed, and

23  otherwise manages workflows in a first-in, first-out order is "reasonable").

24       Plaintiffs also argue that even if USCIS's visa availability approach is a rule of reason, the

25  agency does not consistently apply the rule.  Dkt. No. 14 at 8–11.  They point to the recent

26  substantial increases in processing times and decreases in total number of adjudications

27  completed.  Dkt. No. 14 at 8–9.  According to plaintiffs, "[b]ecause USCIS implemented the vis[a]

28  availability approach to increase its adjudication numbers," it is "apparent" that USCIS is not

applying this approach "because its productivity has, at best, remained static." Dkt. No. 14 at 9.
Additionally, in their reply brief, plaintiffs refer to the declaration of Jennifer Duncan, Acting
Chief of Staff for the Immigrant Investor Program Office at USCIS, filed in another action, which
describes USCIS's purportedly inadequate data collection and reporting efforts. Dkt. No. 29-1 at
1-3. Citing this declaration, plaintiffs contend "[i]f the Agency has no idea how long it takes to
adjudicate a Form I-526, it cannot defend the 18-26 months waits in this case." Dkt. No. 29 at 2.
The Court agrees that the decline in productivity is significant and that USCIS has not fully
explained it. But plaintiffs bear the burden of establishing a likelihood of success on the merits,
and their showing is too meager to support their present contention that USCIS is not actually
applying the visa availability approach.[7]  Among other things, plaintiffs fail to account for the
many other factors that may impact the agency's adjudication of petitions, such as staff attrition
(the number of total personnel fell from 245 to 236), Dkt. No. 27 at 15 n.14, and greater
coordination between USCIS and law enforcement agencies to enhance the integrity of the
program. *See* Dkt. No. 27-2, Ex. I ("EB-5 Stakeholder Engagement (March 13, 2020)"), at 6
(positing that case completion rates have decreased because of activities to protect the program
from abusive actors).

Finally, plaintiffs contend that USCIS does not follow a rule of reason because some Form
I-526 petitions from investors who are similarly situated to plaintiffs have obtained expedited
processing for their petitions. Dkt. No. 14 at 11, Dkt. No. 1-2. When pressed at the hearing,
plaintiffs' counsel conceded that this "expedited" treatment was the result of litigation efforts on
behalf of other plaintiffs in other actions. *See* Stipulation of Dismissal, *Gutta v. Renaud*, No. 20-
cv-06579-DMR, 2021 WL 533757 (N.D. Cal. Mar. 11, 2021), Dkt. No. 38; Stipulation and Order
of Dismissal, *Raju v. Cuccinelli*, No. 3:20-cv-1386 (AGT), 2020 WL 4915773 (N.D. Cal. Sept. 9,
2020), Dkt. No. 30. Moreover, plaintiffs concede that they have not applied for expedited

---

[7] Plaintiffs' reliance on *Solis v. Cissna*, No. CV 9:18-00083-MBS, 2019 WL 8219790, at *17
(D.S.C. July 11, 2019) is misplaced. In that case, the court considered competing motions for
*summary judgment* involving delayed processing of U-visa applications, and concluded that
USCIS had failed to carry its burden on the first *TRAC* factor, in part, because USCIS's own data
contradicted the process it claimed to follow.

United States District Court
Northern District of California

United States District Court
Northern District of California

treatment of their petitions, even though USCIS will consider an "expedite request" that meets its published criteria.  Dkt. No. 27-2, Ex. I ("Chapter 5—Requests to Expedite Applications or Petitions," USCIS Policy Manual).[8]

Accordingly, the first *TRAC* factor weighs in favor of USCIS.

### 2.      Congressional Timetable

The second *TRAC* factor considers whether Congress has provided an indication of the speed with which it expects an agency to act.  Here, Congress has not mandated a timeline to process Form I-526 petitions, like plaintiffs'.  However, a 2000 statute authorizing funds to eliminate a then-existing backlog of certain immigration petitions provides: "It is the *sense of Congress* that the processing of an immigrant benefit application should be completed not later than 180 days after the initial filing of the application[.]" 8 U.S.C. § 1571(b) (emphasis added).  But this "sense of Congress" provision is "merely precatory," and creates no enforceable rights.  *See Yang v. Cal. Dept. of Social Servs.*, 183 F.3d 953, 958 (9th Cir. 1999); *see also Monahan v. Dorchester Counseling Center, Inc.*, 961 F.2d 987, 994–95 (1st Cir. 1992).  Moreover, plaintiffs concede that this sense of Congress was not directed to Form I-526 petitions specifically, but rather to any "immigrant benefit application."  Hearing on Motion for Preliminary Injunction, *Jain v. Renaud*, No. 21-cv-3115-VKD (Jun. 14, 2021), Dkt. No. 32.

While the "sense of Congress" is informative, and favors plaintiffs' argument the delays they have experienced greatly exceed that "sense," Congress has so far chosen not to mandate a timeline for adjudicating Form I-526 petitions.  *See Yang*, 183 F.3d at 958 (concluding that the "sense of Congress" language bestows no enforceable rights); *but see Keller Wurtz v. USCIS*, No. 20-cv-2163-JCS, 2020 WL 4673949, at *5 (Aug. 12, 2020) (finding that although 8 U.S.C. § 1571(b) does not mandate a timeline, it weighed in favor of finding the delay at issue unreasonable); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014) (same).

On the present record, the Court concludes that the second *TRAC* factor is neutral.

---

[8] These criteria include "severe financial loss to a company or person," "emergencies and urgent humanitarian reasons," a nonprofit organization's request in furtherance of the cultural and social interests of the United States, U.S. government interests, and clear USCIS error.  Dkt. No. 27-2, Ex. I.

### 3.    Nature of Interests

The third and fifth *TRAC* factors overlap, requiring this Court to consider whether plaintiffs' claim implicates human health and welfare, as well as the nature and extent of the interests prejudiced by the delay.  *See Indep. Min. Co.*, 105 F.3d at 509; *Islam*, 32 F. Supp. 3d at 1073.  Plaintiffs' supporting declarations largely describe economic and lifestyle interests that are adversely affected by USCIS's delay.  For example, one applicant, a national of the Czech Republic, is "unable to properly and diligently supervise some of [his] investments and ventures," Dkt. No. 1-1 at 6; another, a national of the United Kingdom, is "desperate to rectify the mistake [of moving to New Zealand]," where she and her husband "do not belong," Dkt. No. 1-1 at 11-12. Many plaintiffs attest to the stress they experience as a result of the delay in processing their petitions.  However, plaintiffs do not make a persuasive showing of prejudice to the kind of serious health and welfare interests that would support a mandatory preliminary injunction.  *Cf. Keller Wurtz*, 2020 WL 4673949, at *5 (finding that plaintiff's allegation that she could not visit her elderly father in Mexico went beyond merely commercial concerns, although "not as strongly as it might if Keller Wurtz faced persecution, medical consequences, or other more severe harm if not granted relief"); *Ray v. Cuccinelli*, No. 20-cv-06279-JSC, 2020 WL 6462398, at *9 (N.D. Cal. Nov. 3, 2020) (finding third and fifth *TRAC* factors weighed in favor of plaintiffs, who could lose employment eligibility); *Najafi v. Pompeo*, No. 19-cv-05782-KAW, 2019 WL 6612222, at *7 (N.D. Cal. Dec. 5, 2019) (finding family separation tilted the third and fifth *TRAC* factors toward plaintiffs).

Once the current Regional Center NCE program expires, Congress may not reauthorize it, and plaintiffs' interests include not merely whether the program will be reauthorized, but when. However, as plaintiffs acknowledge, reauthorization legislation has already been introduced, *see* "EB-5 Reform and Integrity Act of 2021," S. 381, 117th Cong. § 2 (2021), and the history of prior reauthorizations is not inconsistent with the expectation that Congress will indeed reauthorize the program.

Accordingly, the Court finds that the third and fifth *TRAC* factors weigh against plaintiffs.

### 4.     Effect of Expediting Delayed Action

The fourth *TRAC* factor requires the Court to consider the effect of expediting adjudication of plaintiffs' applications "on agency action of a higher or competing priority." *Islam*, 32 F. Supp. 3d at 1073; *Ray*, 2020 WL 6462398, at \*10; *Keller Wurtz*, 2020 WL 4673949, at \*5; *Najafi*, 2019 WL 6612222, at \*7.  Here, plaintiffs argue that advancing the adjudication of plaintiffs' petitions will not prejudice USCIS, particularly when all plaintiffs are from countries with visas available and each invested in an NCE that has already been reviewed by the agency.  Dkt. No. 14 at 15.  At most, they argue, advancing adjudication of plaintiffs' petitions will have a "*de minimis* impact on applications of the same priority that use the same resources." *Id.*

Most courts have found that the fourth *TRAC* factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back one space and produce no net gain.  *Ray*, 2020 WL 6462398, at \*10 (citing *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)); *Thakker*, 2021 WL 1092269, at \*7; *Desai*, 2021 WL 1110737, at \*7; *Palakuru*, 2021 WL 764162, at \*5; *but see Keller Wurtz*, 2020 WL 4673949, at \*5 (without evidence showing that granting relief to plaintiffs would serve only to delay other equally deserving applications, the court could not grant the government's motion to dismiss plaintiff's unreasonable-delay claim).  USCIS argues that this is precisely the effect a mandatory injunction in plaintiffs' favor would have.  Dkt. No. 27 at 19-20.

In an effort to distinguish this authority, plaintiffs contend that in 2017, well before plaintiffs' filed their petitions, USCIS demonstrated an ability to "adjudicate[] 60.7 [Form I-526] petitions per day."  Dkt. No. 14 at 16.  This argument does not persuade, as it does not address the circumstances in which USCIS currently processes EB-5 applications.  *See* Dkt. No. 27-2, Ex. E, at 2; Dkt. No. 27-2, Ex. I, at 6.  Plaintiffs make no showing that would justify moving them to the head of the queue, or why their petitions should be processed immediately while other similarly-situated petitioners wait their turn.  If, in fact, USCIS's delay in processing is unreasonable, as plaintiffs contend, the impact is not unique to these plaintiffs.  *Cf. Liu v. Mayorkas*, No. 20-cv-654 (CRC), 2021 WL 2115209, at \*5 (May 25, 2021) (fourth *TRAC* factor "essentially neutral" where plaintiff alleged "not that USCIS assigned him the wrong place in line," but that the "line as a

whole" was moving too slowly).

The Court finds that the fourth *TRAC* factor weighs in favor of USCIS.

### 5. Impropriety

The sixth and final *TRAC* factor instructs this Court not to place undue weight on the absence of improper motive. *Keller Wurtz*, 2020 WL 467949, at *6. A finding of a delay in bad faith, however, makes that delay unreasonable. *See Indep. Min. Co.*, 105 F.3d at 510.

Here, plaintiffs argue that the "appearance of impropriety is palpable." Dkt. No. 14 at 17. For support, they provide links to blog posts and news articles quoting immigration attorneys. Dkt. No. 14 at 17–18. Plaintiffs argue that these websites are evidence that the previous presidential administration acted in bad faith to "gut[]" the immigration system. Dkt. No. 14 at 17–18. The Court's review of these links led to unavailable webpages and, where the sites were available, to blog comments filled with speculation. Accordingly, the Court finds that this factor does not contribute in any meaningful way to the Court's consideration of plaintiffs' likelihood of success on the merits.

The Court concludes that the first, third, fifth, and fourth *TRAC* factors weigh in favor of USCIS; the second factor is neutral; and the sixth is irrelevant. While plaintiffs have raised serious questions concerning USCIS's productivity, they have not demonstrated a likelihood that they will succeed in establishing that USCIS unreasonably delayed adjudication of their Form I-526 petitions.

### B. Irreparable Injury

To demonstrate irreparable injury, plaintiffs must show more than a mere "possibility" of irreparable harm. *See Winter*, 555 U.S. at 22. They must demonstrate that "irreparable injury is *likely* in the absence of an injunction." *Id.*; *see Najafi*, 2019 WL 6612222, at *8 (plaintiff demonstrated irreparable injury when she remained unable to enter the United States to visit her ailing, elderly mother).

Plaintiffs argue that without the relief requested they will suffer "irreparable harm." Dkt. No. 14 at 18. They incorporate by reference their arguments in favor of the third and fifth *TRAC* factors, *id.*, arguments that this Court has already found are not sufficient to tilt those factors in

plaintiffs' favor.  The Court thus focuses on plaintiffs' argument that because the statutory provision authorizing their EB-5 pathway is set to expire on June 30, 2021, they stand to lose their immigrant visas and will either remain in nonimmigrant status abroad or within the United States. *Id.*

First, as USCIS notes, plaintiffs are not certain to obtain an EB-5 immigrant visa and so their loss of this not-yet-obtained benefit is speculative.  Dkt. No. 27 at 21.  Moreover, those plaintiffs who currently hold nonimmigrant visas have not alleged that they stand to lose their current visas.  Rather, plaintiffs stand to lose their *opportunity* to obtain EB-5 visas, or perhaps their place in the USCIS processing queue.

Here, even if the relevant statutory provision expires on June 30, 2021, plaintiffs provide no evidence that their EB-5 visa applications will disappear or that they will be sent to the back of the line.  In fact, during the most recent lapse in authorization, between December 2018 and January 2019, USCIS alerted the public that "[USCIS] will put unadjudicated regional center-affiliated Forms I-526 and I-485 (whether filed before or after expiration date) on hold for an undetermined length of time."  Dkt. No. 27-4, Ex. N, at 1.  As USCIS observes, the Regional Center NCE program through which plaintiffs applied has been reauthorized on numerous occasions, and in the past months, both houses of Congress have introduced legislation to reauthorize the program.  Dkt. No. 27 at 22.

Second, to the extent plaintiffs' investments in NCEs is placed at risk by the expiration of Congressional authorization, this is precisely the kind of economic harm that can be redressed through money damages, and is not, therefore, irreparable.  *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (injuries, "however substantial," in terms of money, time, or energy do not constitute irreparable harm).

Accordingly, the Court concludes that plaintiffs have not demonstrated that irreparable harm is likely absent an injunction.

## C.      Balancing the Equities

In balancing the equities, courts in the Ninth Circuit weigh the hardships to all parties.  *See All. for the Wild Rockies*, 632 F.3d at 1137–38; *Northern Cheyenne Tribe v. Norton*, 503 F.3d 836,

843–44 (9th Cir. 2007) (a court must balance the competing claims of injury and consider the effect on each party of the granting or withholding of the injunctive relief). Here, as discussed, plaintiffs face chiefly economic hardship (significant in some circumstances), and adverse impacts to their lifestyles and personal aspirations. The Court acknowledges that the delay plaintiffs have experienced, and continue to experience, makes them unable to plan for the future with certainty. On the other hand, USCIS contends that "Form I-526 filings are often thousands of pages long and among the most complicated form types adjudicated by USCIS." Dkt. No. 27 at 24–25. The agency argues that a mandatory injunction requiring adjudication of plaintiffs' 10 petitions before June 30, 2021 would impose a "significant operational burden on USCIS." *Id.* at 25.

The record is not well-developed by the parties on this point. USCIS does not detail the "significant" operational burdens it says an injunction would impose. Plaintiffs' declarations provide more information, but the nature of the purported hardships they will experience is not particularly severe. As between plaintiffs and USCIS, the balance of hardships does not tilt significantly in either direction.

### D.    Public Interest

Finally, plaintiffs argue that an injunction is in the public interest because "the public has an interest in a government agency that acts lawfully, consistently, rationally, and with a sense of predictability," and that an injunction from this Court will reinforce that interest. Dkt. No. 14 at 19. The Court struggles to see how advancing plaintiffs' applications in line, ahead of other similarly situated applicants, will reinforce the interest they describe. Certainly, the public has an interest in USCIS's processing Form I-526 petitions expeditiously and without unreasonable delay, but the relief plaintiffs request does not advance that interest. As USCIS observes, "[n]umerous I-526 petitioners have been waiting longer than Plaintiffs, and they have a strong interest in the visa availability approach's [first-in, first-out] component." This factor thus weighs against plaintiffs.

## IV.    CONCLUSION

For the reasons set forth above, the Court DENIES plaintiffs' motion for a mandatory preliminary injunction.

14

**IT IS SO ORDERED.**

Dated: June 16, 2021

VIRGINIA K. DEMARCHI
United States Magistrate Judge