UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAURABH JAIN, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>UR M. JADDOU,<br><br>                    Defendant. | Case No.  21-cv-03115-VKD<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 56, 59 |

Plaintiffs are ten foreign nationals who applied for immigrant visas under the immigrant investor visa program known as "EB-5."  8 U.S.C. § 1153(b)(5).  They allege that U.S. Citizenship and Immigration Services ("USCIS") has unreasonably delayed adjudication of their Form I-526 petitions, and they seek judicial review of the agency's action under the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1).  Dkt. No. 1 ¶¶ 195-200.

In May 2021, plaintiffs moved for a preliminary injunction.  Dkt. No. 14.  The Court denied the motion.  Dkt. No. 33.  On July 16, 2021, USCIS filed a motion to dismiss plaintiffs' complaint.  Dkt. No. 36.  Before the Court could hear the motion, the parties stipulated to stay this case, pending Congressional reauthorization of funding for the EB-5 visa program.  *See* Dkt. No. 38.  The Court granted the stay and administratively closed the case.  Dkt. Nos. 39, 41.  On March 30, 2022, the Court re-opened the case, and USCIS withdrew its motion to dismiss.  Dkt. Nos. 43, 44.

On August 18, 2022, USCIS moved for summary judgment.  Dkt. No. 56.  Plaintiffs opposed the motion and cross-moved for summary judgment.  Dkt. No. 59.  On November 1, 2022, the Court held a hearing on the parties' motions.  Dkt. No. 64.  Following the hearing, and at

United States District Court
Northern District of California

the Court's direction, USCIS filed a sur-reply.[1]  Dkt. Nos. 66, 69.

For the reasons stated below, the Court grants USCIS's motion for summary judgment, and denies plaintiffs' cross-motion for summary judgment.

# I.     BACKGROUND

Unless otherwise indicated, the following facts are not genuinely disputed.

## A.     EB-5 Immigrant Investor Visa Program

The EB-5 immigrant investor visa program provides a path for immigrant investors and their family members to obtain lawful permanent residence in the United States if they invest in new commercial enterprises ("NCEs") that create full-time employment for at least 10 U.S. workers.  8 U.S.C. § 1153(b)(5).  At the time relevant to these proceedings, if a non-citizen investor chose to invest in an NCE in a "targeted employment area,"[2] he or she would have to invest at least $500,000.[3]  8 U.S.C. § 1153(b)(5)(C).

One way that a non-citizen may participate in the EB-5 program is by investing in a designated "Regional Center" NCE.  *See* Dep't of Commerce, et al., Appropriations Act, 1993, Pub. L. No. 102-395, § 610(a) ("Appropriations Act of 1993") (Oct. 6, 1992), as amended. Multiple investors may invest in the same Regional Center, and they may satisfy the employment creation requirement by establishing that the investment will create a sufficient number of jobs indirectly, as demonstrated by accepted, reasonable methodologies.[4]  *See* 8 C.F.R. § 204.6(m)(7)(ii).

The Regional Center program was temporary, and its continuation required reauthorization

---

[1] Additionally, since the hearing, the parties have filed several notices of supplemental authority. Dkt. Nos. 68, 70, 71, 73, 74, 75, 76.

[2] "Targeted employment area" is defined as "a rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate)."  8 U.S.C. § 1153(b)(5)(B)(ii).

[3] In March 2022, the minimum amount required for investment in an NCE in a targeted employment area was increased to $800,000.

[4] By contrast, a non-citizen investor relying on a "Direct" EB-5 petition must show that his or her NCE investment directly results in the creation of full-time employment of at least 10 U.S. workers by demonstrating that the NCE directly hired at least 10 full-time employees.  8 U.S.C. § 1153(b)(5)(A)(ii).

1    by Congress.  *See* Appropriations Act of 1993 § 610(b).  Since its advent in 1992, the program has

2    been reauthorized many times.  *See* Holly Straut-Eppsteiner, *Congressional Research Service*

3    *Report on the EB-5 Immigrant Investor Visa* (updated June 8, 2021),

4    https://crsreports.congress.gov/product/pdf/IF/IF11848.

5           Congressional authorization for the Regional Center program expired in accordance with

6    its then-existing terms on June 30, 2021.  Consolidated Appropriations Act of 2021, Pub. L. 116-

7    120, div. O, title I, § 104, 134 Stat. 1182, 2148 (substituting "June 30, 2021" for "September 30,

8    2015" in § 610(b) of Pub. L. 102-395).  Once the program lapsed, USCIS stopped adjudicating

9    Regional Center-based Form I-526 petitions.  USCIS placed then-pending petitions on hold,

10   allowing petitioners, including plaintiffs, to maintain their place in the adjudication workflow.  *See*

11   Dkt. No. 56-2, Ex. 11 at 4-5 (USCIS, EB-5 Reform & Integrity Act of 2022 Listening Session

12   (Apr. 29, 2022).

13          In March 2022, President Biden signed a Consolidated Appropriations Act, *see* Pub. L. No.

14   117-103, which included the EB-5 Reform and Integrity Act of 2022 and provided authority for a

15   reformed Regional Center program through September 30, 2027.  *See* Dkt. No. 56-3, Ex. 12

16   (USCIS, EB-5 Immigrant Investor Program (Apr. 19, 2022)); *see also* 8 U.S.C. § 1153(b)(5)(E)(i).

17   The EB-5 Reform and Integrity Act repeals prior legislation authorizing the Regional Center

18   program, but includes certain "grandfathering" provisions which permit adjudication of Form I-

19   526 petitions filed before March 15, 2022, according to the eligibility requirements in place at the

20   time such petitions were filed.  *See* Dkt. No. 56-3, Ex. 6.  Accordingly, since enactment of this

21   new legislation, USCIS has resumed processing Regional Center-based Form I-526 petitions filed

22   on or before expiration of the statutory authorization of the legacy Regional Center program.  *Id.*

23          USCIS has a backlog of pending Form I-526 petitions.  Over the past few years, the pace

24   of the agency's processing of petitions has declined and the backlog has grown.  For example,

25   USCIS completed adjudication of over 12,000 petitions in FY 2017[5] and over 15,000 petitions in

26

27   _____

     [5] The fiscal year runs from October 1 of one year and ends on September 30 of the following year.
     Glossary Definition of "Fiscal year," U.S. Citizenship and Immigration Services,
28   https://www.uscis.gov/tools/glossary.

United States District Court
Northern District of California

United States District Court
Northern District of California

FY 2018, but adjudicated only 4,492 petitions in FY 2019 and only 3,421 petitions in FY 2020. Dkt. No. 1-3 at 3 (USCIS I-526 petitions completed by fiscal year).  Meanwhile, USCIS reported average processing times of 16.6 months for petitions adjudicated in FY 2017 but 31.2 months for petitions adjudicated in FY 2020.  *See* Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms by Fiscal Year, https://egov.uscis.gov/processing-times/historic-pt) (last visited: March 31, 2023).  As of November 2022, USCIS reports processing times for immigrant investors, other than those from mainland China, ranging from 46 months (for India) to a high of 58.5 months (for the rest of the world).  Dkt. No. 68 at 3-4.

### B.     USCIS's "Visa Availability" Review Process

Until recently, USCIS reviewed and adjudicated Form I-526 petitions on a "first in, first out" basis—i.e., the petitions were processed in the order of filing.  Dkt. No. 56-3, Ex. 4, at 1-2. In the spring of 2020, USCIS announced the adoption of a "visa availability" approach to processing these petitions.  Dkt. No. 56-3, Ex. 3 ("USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory").  This approach takes into account the availability of visas for an immigrant's country of chargeability (typically, the country of birth) and gives highest priority to petitions for which visas are or soon will be available.[6]  *See id.*  After considering the availability of visas, USCIS considers several other factors, including whether the relevant NCE has already been reviewed and when the petition was filed (i.e., "first in, first out").  Dkt. No. 56-3, Ex. 4 ¶¶ A1, A14 ("Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach").  The parties disagree regarding whether and to what extent USCIS deviates from this published review process.

### C.     Plaintiff's Form I-526 Petitions

Plaintiffs are nationals of India, the Czech Republic, Afghanistan, Nigeria, Canada, and the United Kingdom.  *See* Dkt. No. 1-1 (plaintiffs' declarations).  Each plaintiff filed a Form I-526 petition in 2019 as part of the EB-5 Regional Center program and invested at least $500,000 in an

---

[6] The Immigration and Nationality Act places annual limits on the number of employment-based visas allocated to immigrants from each country of chargeability.  8 U.S.C. § 1152.

1    NCE in an effort to qualify for a visa.  Dkt. No. 56-1 ¶ 25; Dkt. No. 1 ¶¶ 90-92 (Jain), 101-03

2    (Saraf), 112-14 (Bleach), 123-25 (Khan), 134-36 (Nwankor), 144-46 (Shahand), 153-55 (Arora),

3    162-64 (Donocik), 172-74 (Bhandari), 183-85 (Grundleger).  Plaintiffs Khan, Shahand, Jain,

4    Donocik, Bhandari, Grundleger, and Saraf currently reside in the United States in lawful

5    nonimmigrant status.  Dkt. No. 56-1 ¶ 30.  The remaining plaintiffs (Arora, Bleach, and Nwankor)

6    reside outside the United States.  *Id.*

7        At the time the complaint was filed, plaintiffs' Form I-526 petitions had been pending for

8    between 17 months and 25 months.  Dkt. No. 56-1 ¶ 25; Dkt. No. 1 ¶¶ 91, 102, 113, 124, 135, 145,

9    154, 163, 173, 184.  Now, plaintiffs' petitions have been pending for between 40 and 48 months.

10   *See* Dkt. No. 56-1 ¶ 25.

## II.    LEGAL STANDARD

12       A party may move for summary judgment on a "claim or defense" or "part of . . . a claim

13   or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when, after adequate

14   discovery, there is no genuine issue as to any material facts and the moving party is entitled to

15   judgment as a matter of law.  *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

16   Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*,

17   477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence

18   for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

19       A party seeking summary judgment bears the initial burden of informing the court of the basis

20   for its motion, and of identifying those portions of the pleadings and discovery responses that

21   demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Where the

22   moving party will have the burden of proof at trial, it must affirmatively demonstrate that no

23   reasonable trier of fact could find other than for the moving party.  *Southern Calif. Gas. Co. v. City of*

24   *Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

25       On an issue where the nonmoving party will bear the burden of proof at trial, the moving party

26   may discharge its burden of production either (1) by "produc[ing] evidence negating an essential

27   element of the nonmoving party's case" or (2) after suitable discovery, by "show[ing] that the

28   nonmoving party does not have enough evidence of an essential element of its claim or defense to

United States District Court
Northern District of California

5

discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324–25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Anderson*, 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

"When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001). Where the legal issue central to both motions is the same, the court need not organize its analysis of the cross-motions in separate sections. *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty.*, 249 F.3d at 1134).

## III.   DISCUSSION

Plaintiffs move for summary judgment that adjudication of their Form I-526 petitions has been unreasonably delayed as part of a dramatic and unjustified increase in USCIS's processing times in violation of the APA, 5 U.S.C. § 706(1). Dkt. No. 1 ¶¶ 48-55; Dkt. No. 59. They ask the Court to enter an order declaring USCIS's delays unreasonable and compelling the agency to adjudicate their petitions within 30 days. Dkt. No. 1 ¶¶ 293-297; Dkt. No. 59 at 23. USCIS moves for summary judgment that it has not unreasonably delayed adjudication of plaintiffs'

petitions.  Dkt. No. 56.

### A.   Disputes Concerning Evidence and the Record

Plaintiffs complain that USCIS has not produced an adequate agency record and urge the Court to deny USCIS's motion on this ground alone.  Dkt. No. 59 at 3-4.  Plaintiffs further say that when a Court reviews an administrative record, only certain evidence "belong[s] in a record."  *Id.* at 3.  In short, plaintiffs argue that this case requires the Court to review a certified administrative record, and that USCIS has failed to produce such a record.

Plaintiffs misapprehend the nature of judicial review in this case.  They confuse challenges to the propriety of a final agency action, with actions to compel an agency to act in the first instance.  *See Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000).  "An action to compel an agency [to take action] is not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(1), to compel agency action unlawfully withheld or unreasonably delayed.  In such cases, review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record."  *Id.*

Following a case management conference, the Court ordered the parties to confer regarding the records and other information to be included in USCIS's production of documents.  Dkt. No. 50; *see also* Dkt. No. 52 at 13:22-24; 20:1-3.  The order provided that "[i]f plaintiffs believe they require additional documents or information in order to respond to defendant's motion [for summary judgment], plaintiffs must file a motion that meets the requirements of Rule 56(d) within 21 days of defendant's motion for summary judgment."  Dkt. No. 50 at 1-2.  After USCIS produced documents, plaintiffs complained that the production did not include the declarations on which USCIS might rely in support of its then-anticipated summary judgment motion.  Dkt. No. 54 at 1-3.  The Court again reminded plaintiffs of the availability of a Rule 56(d) motion to obtain any necessary discovery.  Dkt. No. 55.

Despite these very specific directions, plaintiffs did not file a Rule 56(d) motion.  They argue that they "did not have the factual basis to draft an affidavit under oath in support of a Rule 56[d] motion" because they could not "identify the specific facts they hoped to learn, the existence of such facts, or that any sought facts are essential to their argument."  Dkt. No. 62 at 2.

1    Plaintiffs' arguments are not persuasive.  Plaintiffs oppose USCIS's motion on the merits

2    and cross-move for summary judgment in their favor based, in part, on speculation and attorney

3    argument calling into question the evidence on which USCIS relies.  They had ample opportunity

4    to seek discovery in aid of these points in responding to USCIS's summary judgment evidence,

5    including USCIS's declaration testimony, but they simply elected not to do so.  *See Vaz v. Neal*,

6    33 F.4th 1131 (9th Cir. 2022) (citing Rule 56(d) to observe that "[plaintiff] made no formal

7    request under Rule 56(d) to continue the hearing on the [agency's] motion, to allow for discovery"

8    of agency resources directed toward adjudicating plaintiff's case).

9    Accordingly, the Court rejects plaintiffs' contention that it should deny summary judgment

10   to USCIS for failure to produce an adequate record for judicial review.

### B.    Unreasonable Delay

12   The APA provides that "[w]ith due regard for the convenience and necessity of the parties

13   or their representatives and within a reasonable time, each agency shall proceed to conclude a

14   matter presented to it."  5 U.S.C. § 555(b).  Where an agency has a "clear, certain, and mandatory

15   duty" to take a discrete action, a court may compel the agency to act where it has "unreasonably

16   delayed" in performing that duty.  *See* 5 U.S.C. § 706(1); *Vaz*, 33 F.4th at 1136.  The parties do

17   not dispute that USCIS has a clear, mandatory duty to adjudicate plaintiffs' Form I-526 petitions.

18   The question presented is whether the agency has unreasonably delayed those adjudications.

19   The Ninth Circuit requires a court to consider the six factors set out in *Telecommunications*

20   *Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984), in evaluating

21   whether agency action has been unreasonably delayed.  *Vaz*, 33 F.4th at 1137.  The *TRAC* factors

22   are: "(1) the time agencies take to make decisions must be governed by a 'rule of reason'[;] (2)

23   where Congress has provided a timetable or other indication of the speed with which it expects the

24   agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of

25   reason[;] (3) delays that might be reasonable in the sphere of economic regulation are less

26   tolerable when human health and welfare are at stake[;] (4) the court should consider the effect of

27   expediting delayed action on agency activities of a higher or competing priority[;] (5) the court

28   should also take into account the nature and extent of the interests prejudiced by the delay[;] and

United States District Court
Northern District of California

(6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'" *Id.* (citing *TRAC*, 750 F.2d at 80).

The Court addresses each of the *TRAC* factors below.

### 1.   First *TRAC* Factor:  Rule of Reason

The most important *TRAC* factor is the first factor, the "rule of reason."  *In re Nat. Res. Def. Council*, 956 F.3d at 1139.

USCIS argues that its "visa availability" review process for adjudicating Form I-526 petitions is a rule of reason that provides a fair, rational, and orderly approach to completing the required agency action.  Dkt. No. 56 at 12-14.  It relies on a description of the process posted on a public website and the declaration of Alissa Emmel, Chief of the Immigrant Investor Program Office, describing the review process.  Dkt. No. 56-3, Ex. 3; Dkt. No. 56-1 ¶¶ 15-18.  USCIS also provides evidence that plaintiffs' petitions are in line to be adjudicated in accordance with the above-described process.  *See* Dkt. No. 56-1 ¶¶ 25-26.  Plaintiffs do not genuinely dispute that USCIS is processing their applications in accordance with the published "visa availability" approach.[7]  Rather, plaintiffs argue that it is not enough for the agency to adopt some reasonable "processing logic"; rather, the agency's processing rule must control "the actual timing of an adjudication."  Dkt. No. 59 at 14.

In support of their thesis, plaintiffs rely on two cases from the Court of Appeals for the District of Columbia Circuit, *Potomac Elec. Power Co. v. I.C.C.* ("*PEPCO*"), 702 F.2d 1026 (D.C. Cir. 1983) and *MCI Telecommunications Corp. v. FCC* ("*MCI*"), 627 F.2d 322 (D.C. Cir. 1980)).  Neither case holds that a rule of reason must prescribe a definite time for adjudication.  Rather, in each case the D.C. Circuit considered the nature of the agency action at issue and the specific statute governing the action in question.  For example, in *PEPCO*, after examining the relevant statutory provision and the legislative history for the Interstate Commerce Commission's rate-setting authority, the court concluded that "the concerns over long-delayed

---

[7] Plaintiffs do contend that USCIS has deviated from its visa availability approach in handling other Form I-526 petitions, which has delayed resolution of their own applications.  Dkt. No. 59 at 6.  Those complaints are addressed in connection with the sixth *TRAC* factor below.

proceedings evident in the [statutory text] and in the legislative history accompanying that provision are important to our decision in this appeal. It is beyond cavil that Congress wanted a change in the speed with which the Commission performed its regulatory duties." *PEPCO*, 702 F.2d at 1034.  Likewise, in *MCI*, the court referred to the statutory framework, which included time limits for other action that would be undermined if the agency delayed too long.  *MCI*, 627 F.2d at 340 ("[T]he entire ratemaking procedure in the 1934 Communications Act revolves around a "rule of reason" as to how long the FCC may take between the filing of tariff revisions and its final decision.  It assumes that rates will be finally decided within a reasonable time encompassing months, occasionally a year or two, but not several years or a decade.").  As the D.C. Circuit has more recently observed, whether agency action is governed by a rule of reason "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part, as we have said, upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

All of the district courts that have considered the question on the merits have concluded that USCIS's "visa availability" approach to processing Form I-526 petitions satisfies the rule of reason factor.  *See, e.g., Ramesh v. Mayorkas, et al.*, No. 21-653-DMR, Dkt. No. 44 at 9-12 (N.D. Cal. Feb. 7, 2023); *Bega v. Jaddou*, No. CV 22-02171 (BAH), 2022 WL 17403123, at *6-*7 (D.D.C. Dec. 2, 2022); *Da Costa v. Immigr. Inv. Program Off.*, No. CV 22-1576 (JEB), 2022 WL 17173186, at *8 (D.D.C. Nov. 16, 2022); *Mokkapati v. Mayorkas*, No. 21-1195, 2022 WL 2817840, at *6 (D.D.C. July 19, 2022); *Desai v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-1005 (CKK), 2021 WL 1110737, at *5 (D.D.C. Mar. 22, 2021); *Thakkar v. Renaud*, No. 20-1133 (CKK), 2021 WL 1092269, at *6 (D.D.C. Mar. 22, 2021); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021), *appeal dismissed,* No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021).

The Ninth Circuit's recent decision in *Vaz* is not to the contrary.  In that case, the plaintiff had been waiting for about four years for the responsible agency to complete its investigation of

his complaint against his immigration attorney.  *Vaz*, 33 F.4th at 1137-1138.  Although the plaintiff "present[ed] no developed argument that the [agency's] delay was unreasonable under the *TRAC* balancing test," the Ninth Circuit noted its prior observations that "[r]epeatedly, courts in this and other circuits have concluded that a reasonable time for agency action is typically counted in weeks or months, not years," *id.* at 1138 (citing *Nat. Res. Def. Council*, 956 F.3d at 1139) (internal quotes omitted), and "assume[d] without deciding" that the first factor weighed in the plaintiff's favor, *id.*  However, the court ultimately concluded that the agency's delay was not unreasonable as a matter of law and that the plaintiff was not entitled to relief under the APA.  *Id.* at 1138-1139.  Thus, *Vaz* does not stand for the proposition that a four-year delay is *per se* unreasonable, or for the proposition that a delay of that length cannot be governed by a rule of reason under the first *TRAC* factor.

The first *TRAC* factor weighs in favor of USCIS.

### 2.    Second *TRAC* Factor: Congressional Indication

The second *TRAC* factor considers whether Congress has provided an indication of the speed with which it expects an agency to act.  Here, the parties agree that Congress has not mandated a time limit for adjudication of Form I-526 petitions.  Dkt. No. 56 at 19; Dkt. No. 59 at 15.  They disagree, however, about whether Congress's precatory guidance informs the Court's determination of whether USCIS has unreasonably delayed action on plaintiffs' petitions and Form I-526 petitions generally.  Dkt. No. 56 at 18-19; Dkt. No. 59 at 14-15.

Plaintiffs point to a 2000 statute authorizing funds to eliminate a then-existing backlog of certain immigration petitions that provides: "It is the sense of Congress that the processing of an immigrant benefit application should be completed not later than 180 days after the initial filing of the application[.]"  8 U.S.C. § 1571(b).  In addition, plaintiffs point to a provision of the recently enacted EB-5 Reform and Integrity Act of 2022, in which Congress directed USCIS to complete a fee study and to adjust the fees it charges "to achieve efficient processing."  Pub. L. No. 117-103 § 106(b), 136 Stat. 49, 1103-04 (Mar. 15, 2022).  Specifically, Congress required USCIS to set fees for services provided under the immigrant investor programs "at a level sufficient to ensure the full recovery only of the costs of providing such services, including the cost of attaining the goal

of completing adjudications, on average, not later than" 90 to 240 days, depending on the nature of the petition.  *Id.*

The Ninth Circuit has held that a "sense of Congress" provision "amounts to no more than non-binding, legislative dicta" and "creates no enforceable federal rights."  *See Yang v. Cal. Dep't of Soc. Servs.*, 183 F.3d 953, 958, 961 (9th Cir. 1999); *accord Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008) ("[A] sense of Congress resolution is not law.").  Such a provision differs from a specific statutory mandate directing an agency to act "expeditiously" or within a certain time.  *See, e.g., Galvez v. Jaddou*, 52 F.4th 821, 834 (9th Cir. 2022) ("Congress specifically mandated 'expeditious adjudication' for SIJ petitions, 8 U.S.C. § 1232(d)(2), unlike nearly all other petitions or applications for immigration benefits."); 8 U.S.C. § 1232(d)(2) ("All applications for special immigrant status under section 101(a)(27)(J) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(27)(J)) *shall* be adjudicated by the Secretary of Homeland Security not later than 180 days after the date on which the application is filed.") (emphasis added).

However, the second *TRAC* factor does not require that the Court consider only mandated statutory time limits.  *See Desai*, 2021 WL 1110737, at *6 ("[T]he question posed by *TRAC* is not whether Congress has established a 'binding' timetable, but whether it has provided an 'indication of the speed with which it expects the agency to proceed.'") (quoting *Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 103 (D.D.C. 2020)).  With respect to the Form I-526 petitions at issue, Congress has not been silent, but has at least indicated that the agency's goal should be to adjudicate these provisions in a matter of months, not years.  *See Uranga*, 490 F. Supp. 3d at 103 ("[Section 1571(b)] is certainly an indication of what the legislature had in mind – after all, Congress had the option of saying nothing on the subject at all.").

As noted above, plaintiffs' petitions have been pending for 40 to 48 months.  Even if the Court subtracts the months during which the lapse in Congressional authorization prevented USCIS from acting on pending petitions, plaintiffs have still been waiting for USCIS to adjudicate their petitions for 32 to 40 months.  Moreover, it is undisputed that USCIS's processing time has increased dramatically since 2017.  USCIS offers several explanations for the delays petitioners

have experienced, including staff attrition, the COVID-19 pandemic, spending cuts, competing priorities, as well as the lapse in statutory authorization.  Dkt. No. 56 at 16-17; Dkt. No. 56-1 ¶¶ 7-10; 14.  But as USCIS acknowledged during the hearing, the agency's failure to devote sufficient resources to performing its mandatory duty to adjudicate these petitions—or Congress's failure to appropriate sufficient funds for that purpose—does not relieve the agency from its responsibility to act within a reasonable time.  Dkt. No. 77 at 25:17-26:7.

In the context of agency action on requests for immigration benefits, many courts in the Ninth Circuit have found delays of four years or less not unreasonable.  *See Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014) (collecting cases); *see also Ramesh*, No. 21-653-DMR, Dkt. No. 44 at 12-13.  However, this Court agrees with those district courts that have concluded delays of this magnitude do not compare favorably to available indications of Congressional expectations.  *See Keller Wurtz v. United States Citizenship & Immigr. Servs.*, No. 20-CV-2163-JCS, 2020 WL 4673949, at *5 (N.D. Cal. Aug. 12, 2020) ("USCIS is correct that [the 8 U.S.C. 1571(b)] timeline is not mandatory, but it nevertheless weighs in favor of finding the delay here—approximately four times Congress's stated goal—to be unreasonable."); *Islam*, 32 F. Supp. 3d at 1073 ("While the language of § 1571(b) is not mandatory, it nonetheless suffices to tip the second *TRAC* factor in [plaintiff's] favor."); *see also Desai*, 2021 WL 1110737, at *6 (while finding that plaintiff failed to state an unreasonable delay claim in consideration of all the *TRAC* factors, finding that the second *TRAC* factor weighed in favor of plaintiff in light of § 1571(b)).

It is undisputed that all plaintiffs have been waiting for *years*, well beyond the Congressional indication of the average time an adjudication should reasonably require.  This *TRAC* factor weighs in favor of plaintiffs.

### 3.    Third and Fifth *TRAC* Factors: Nature of Interests

The third and fifth *TRAC* factors overlap, requiring this Court to consider whether plaintiffs' claim implicates human health and welfare, as well as the nature and extent of the interests prejudiced by the delay.  *See Indep. Min. Co.*, 105 F.3d at 509; *Islam*, 32 F. Supp. 3d at 1073.  In the Court's order denying plaintiffs' motion for a preliminary injunction, the Court found that "plaintiffs' supporting declarations largely describe economic and lifestyle interests that are

United States District Court
Northern District of California

1    adversely affected by USCIS's delay."  Dkt. No. 33 at 10.  The Court concluded that plaintiffs did

2    "not make a persuasive showing of prejudice to the kind of serious health and welfare interests

3    that would support a mandatory preliminary injunction."  *Id.*  Plaintiffs do not rely on any new or

4    different evidence on this point in support of their summary judgment motion or in opposing

5    USCIS's summary judgment motion.

6            As before, plaintiffs argue that they have been harmed and prejudiced by USCIS's delay,

7    because they "cannot acquire lawful permanent residence."  Dkt. No. 59 at 16.  For example, one

8    petitioner, a national of the Czech Republic, is "unable to properly and diligently supervise some

9    of [his] investments and ventures," Dkt. No. 1-1 at 6; another, a national of the United Kingdom,

10   is "desperate to rectify the mistake [of moving to New Zealand]," where she and her husband "do

11   not belong," Dkt. No. 1-1 at 11-12.  Many plaintiffs attest to the stress they experience as a result

12   of the delay in processing their petitions, and they assert they are unable to take advantage of the

13   privileges afforded legal permanent residents, such as "acquir[ing] time towards naturalization,

14   travel[ing] internationally without seeking 'admission' upon physical re-entry, establish[ing] in-

15   state residency for state educational benefits, apply[ing] for immigration status for certain family

16   members, freely changing employers or work for themselves without seeking USCIS

17   authorization, vot[ing] in certain local and state elections, acquir[ing] personal and commercial

18   loans on the same terms as United States citizens, apply[ing] for or work on certain state and

19   federal contracts, and other life-changing rights necessary for the pursuit of happiness."  Dkt.

20   No. 59 at 16 (citations to statutory provisions omitted).

21          Approval of plaintiffs' Form I-526 petitions is only the first step in obtaining legal

22   permanent residence, but it is a necessary step.  Dkt. No. 60 at 7; *see also Tongatapu Woodcraft*

23   *Haw., Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir. 1984).  However, plaintiffs' supporting

24   declarations largely describe economic and lifestyle interests that are adversely affected by

25   USCIS's delay.  It is undisputed that seven of the ten plaintiffs already live in the United States.

26   Dkt. No. 56 at 19.  Moreover, plaintiffs do not contend that their current immigration status in the

27   United States will end soon, or that their current status cannot be extended.  *Id.*  As the Court

28   found in its order on plaintiffs' motion for a preliminary injunction, plaintiffs' health- and welfare-

United States District Court
Northern District of California

related concerns do not rise to a level sufficient to support a finding that this consideration favors granting relief.  Courts in this district have found that where a plaintiff does not show "any immediate risk of deportation or impairment to his physical, financial, or safety needs if his application is not immediately adjudicated," the third and fifth *TRAC* factors weigh in favor of denying relief.  *See Beyene v. Napolitano*, No. 12-cv-1149-WHA, 2012 WL 2911838, at *8 (N.D. Cal. July 13, 2012).  Courts have reached the same conclusion with respect to plaintiffs living outside of the United States.  *See Desai*, 2021 WL 1110737, at *7 (finding plaintiff had not plausibly alleged harm to his health and welfare where he was "unable to supervise and oversee his investment in the United States or to otherwise plan for the future.").

The third and the fifth *TRAC* factors weigh in favor of USCIS.

### 4.  Fourth *TRAC* Factor: Effect of Expediting Delayed Action

The fourth *TRAC* factor requires the Court to consider the effect of expediting adjudication of plaintiffs' applications "on agency action of a higher or competing priority."

Plaintiffs argue that USCIS has produced no evidence of any higher priority that would be impacted by a Court order requiring the agency to adjudicate their petitions in 30 days.  Dkt. No. 59 at 17.  But, as USCIS explains, expediting plaintiffs' petitions in the manner they demand would require USCIS to prioritize plaintiffs' petitions ahead of all others, including those filed by petitioners who have waited longer.  For each country of chargeability, earlier filed petitions have higher priority, and USCIS provides undisputed evidence of each plaintiffs' position in the applicable processing queue as of August 17, 2022.  *See* Dkt. No. 56-1 ¶ 25 (queue positions ranging from 647 to 4158); Dkt. No. 60 at 8; *see also* Dkt. No. 33 at 11-12.  Most courts have found that the fourth *TRAC* factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back one space and produce no net gain.  *Ray*, 2020 WL 6462398, at *10 (citing *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100); *Thakkar*, 2021 WL 1092269, at *7; *Desai*, 2021 WL 1110737, at *7; *Palakuru*, 521 F. Supp. 3d at 51 ("[Plaintiff's] arguments do not account for the possibility that many others in his situation—those with available visas who invested in a regional center—filed their petitions before he did.").

1    Plaintiffs suggest that USCIS's resources are so substantial that reviewing plaintiffs'

2    petitions would have virtually no impact on other agency priorities.  Dkt. No. 59 at 17-18.

3    However, it is undisputed that USCIS and its personnel have responsibilities beyond review of

4    Form I-526 petitions.  Dkt. No. 59 at 16-18; Dkt. No. 60 at 8.  The Ninth Circuit has found that

5    requiring an agency to investigate one or several petitioner's cases "interfere[s] with [an agency's]

6    discretion in prioritizing its activities and allocating its resources."[8]  *Vaz*, 33 F.4th at 1138.

7    Plaintiffs articulate no principled basis for an order requiring USCIS to shift resources allocated to

8    these other and higher priorities to adjudicate their petitions.

9    The Court finds that the fourth *TRAC* factor weighs in favor of USCIS.

10                    **5.    Sixth *TRAC* Factor: Impropriety**

11   The sixth *TRAC* factor acknowledges that "the court need not find any impropriety lurking

12   behind agency lassitude in order to hold that agency action is unreasonably delayed," but where an

13   agency has delayed an action in bad faith or demonstrated "utter indifference" to a Congressional

14   timeline, a court may find that this impropriety justifies a finding of unreasonable delay.  *Indep.*

15   *Min. Co. v. Babbitt*, 105 F.3d 502, 510 (9th Cir. 1997) (quoting *Cutler v. Hayes*, 818 F.2d 879

16   (D.C.Cir.1987)).

17   Plaintiffs cite four alleged examples of USCIS misconduct which they contend is at least

18   partially responsible for the processing delays they have experienced.  The Court addresses each

19   argument separately.

20                    **a.    Inaction During Congressional Funding Lapse**

21   Plaintiffs contend that USCIS acted unlawfully when it suspended processing of Form I-

22   526 petitions from July 1, 2021 to March 15, 2022, when congressional funding for the EB-5

23   Regional Center Program lapsed.  Dkt. No. 62 at 9.  Several courts have considered the lapse of

24   authorization and USCIS's suspension of adjudications; none have concluded that the suspension

25   ───────────────

26   [8] The Ninth Circuit cautions, however, that "[n]othing in our decision [in *Vaz*] should be construed as holding that an agency's limited resources always supports denying relief under the APA.

27   Rather, our holding is based on the record before us, which gives us no reason to believe that the Department of Justice's allocation of resources to the [agency] caused the [agency] to

28   unreasonably delay in complying with its duty to investigate [plaintiff's] complaint."  *Vaz*, 33 F.4th at 1138, n.7.

United States District Court
Northern District of California

was unlawful.  To the contrary, in *Da Costa v. Immigrant Investor Program Office*, the court considered whether the 1993 appropriations legislation that created the EB-5 Regional Center Program authorized USCIS to continue processing Form I-526 petitions during the funding lapse, and concluded it did not.  2022 WL 17173186, at \*5-\*6; *see also Mokkapati*, 2022 WL 2817840, at \*6 ("USCIS was unable to act on plaintiffs' petitions . . . given the lapse of statutory authorization for the Regional Center Program between June 2021 and March 2022."); *Sharifullin v. Blinken*, No. 21-728, 2022 WL 558191, at \*3 (D.D.C. Feb. 24, 2022) (dismissing request for adjudication on EB-5 application because the Regional Center program expired on June 30, 2021, and courts "cannot compel USCIS to do what Congress has not authorized it to do"); *Bromfman v. United States Citizenship & Immigr. Servs.*, No. 21-CV-571 (BAH), 2021 WL 5014436, at \*2 (D.D.C. Oct. 28, 2021) ("[T]he Regional Center Program's statutory authorization reached its sunset on June 30, 2021.  Congress ha[d] yet to reauthorize the program [as of October 2021]."); *see also Ramesh*, No. 21-653-DMR, Dkt. No. 44 at 16 n.8 (N.D. Cal. Feb. 7, 2023) ("Courts have acknowledged that USCIS was unable to approve Regional Center-based I-526 petitions during the lapse in statutory authorization.").  Plaintiffs cite no contrary authority.  Indeed, in their motion for preliminary injunction, *plaintiffs* argued that once authorization lapsed USCIS would not be able to process Form I-526 petitions related to the Regional Center program.  Dkt. No. 1 at 2:6-8, 2:20-24.

### b.    Preferential Expediting of Appalachian Center Petitions

Plaintiffs next argue that USCIS unlawfully expedited certain EB-5 applications and other petitioners' Form I-526 petitions contrary to the agency's own rules, and that this misconduct delayed adjudication of plaintiffs' petitions.  Dkt. No. 59 at 8.  Specifically, plaintiffs argue that USCIS expedited approval of a Form I-924 application[9] for the Appalachian EB-5 Regional Center and its affiliates, the Tryon International Equestrian Center and Resort and Odlum Equestrian Lenders LLC (hereinafter "Appalachian Center"), and that it improperly expedited 277

---

[9] Form I-924 is the application for Regional Center designation under the EB-5 immigrant investor program and must be approved before a Regional Center can receive foreign investments.

17

Form I-526 petitions from investors in the Appalachian Center, necessarily delaying adjudication of their own petitions.[10]  *Id.*  Plaintiffs claim these actions were taken as a political favor for former President Trump.  Dkt. No. 59 at 8; Dkt. No. 62 at 11.

In response, USCIS points to evidence explaining the agency's approval of Appalachian Center's Form I-924.  Dkt. No. 56-1 ¶ 21.  USCIS says that the motivating reason behind the agency's approval of Appalachian Center's application was the construction of facilities for the 2018 World Equestrian Games and the agency's finding that the project "is of such a vital degree of economic, social, and financial importance and impact for USDA to certify it to qualify as being 'in the national interest,'" and that "a delay with processing will be detrimental to the interests of the government."  Dkt. No. 56-1 ¶ 21; Dkt. No. 62-1, Ex. A at 168.  USCIS says it expedited the Form I-924 and I-526 petitions for these reasons.  Dkt. No. 56-1 ¶ 21; Dkt. No. 62-1, Ex. A at 168.  The documents on which plaintiffs rely do not contradict this evidence.

USCIS acknowledges that it continued to expedite some Form I-526 petitions filed after the 2018 World Equestrian Games concluded, when the original justification for expediting such petitions no longer applied.  Dkt. No. 56-1 ¶ 21.  The agency points to its efforts to "grapple[] with the complex issue of how to address additional I-526 petitions related to Tryon" after the 2018 World Equestrian Games.  Dkt. No. 69 at 2.  USCIS says that it "ultimately . . . decided to correct the prior error," and that in May 2021, it informed Appalachian Center that "[i]f any petitioner with a pending Form I-526 would like their petition expedited, they may follow the instructions located at How to Make an Expedite Request on USCIS.gov."  Dkt. No. 62-2, Ex. A at 271; Dkt. No. 56-1 ¶ 21; *see also* Dkt. No. 62-2 Ex. A at 280.  In addition, USCIS notes that the 277 petitions to which plaintiffs refer were filed during a three-year period from April 2017 until April 2020.  Because most were filed before plaintiffs filed their petitions in March through November 2019, plaintiffs would not have been entitled to an earlier adjudication.  Dkt. No. 56-1 ¶ 21.  Finally, USCIS points to its statutory authority to expedite groups of cases, including for the

---

[10] Plaintiffs relied on several hundred pages of documents attached to their reply brief.  Dkt. Nos. 62-1, 62-2, 62-3.  The Court ordered USCIS to address these materials in a sur-reply.  Dkt. Nos. 69, 69-1.

United States District Court
Northern District of California

1   purpose of reducing backlogs.  *See* 8 U.S.C. § 1103(a)(1); DHS, Delegation No. 0150.1, §§ II.(G),

2   (W), and (Y) (Dkt. No. 60-1 at 79-86).

3       Plaintiffs offer no evidence to support their claim that USCIS acted unlawfully in

4   approving the Appalachian Center's I-924 and expediting related Form I-526 petitions as a

5   political favor.  *See* Dkt. No. 77 at 40:10-24.  There is no genuine dispute of fact that USCIS

6   approved the I-924 application and began expediting associated Form I-526 petitions based on

7   considerations of the national interest with respect to the 2018 World Equestrian Games.  It is also

8   undisputed that USCIS made an error in continuing to expedite approval of petitions that post-

9   dated that event, rather than requiring petitioners to satisfy the ordinary requirements for expedited

10  action.  But, there is simply no evidence to support plaintiffs' contention that USCIS acted in bad

11  faith, or with "utter indifference" to a statutory deadline.  *Indep. Min. Co.*, 105 F.3d at 510; *see*

12  *also Da Costa*, 2022 WL 17173186, at *9 (discussing the Appalachian Center project in relation to

13  a rule of reason analysis).

14                          **c.      Plaintiffs' Other Arguments**

15      Plaintiffs make two additional arguments that USCIS engaged in misconduct which

16  delayed adjudication of their petitions.

17      First, plaintiffs argue that USCIS uses its adjudication resources to support "Fraud

18  Detection and National Security" ("FDNS") personnel.  Dkt. No. 59 at 9; Dkt. No. 62 at 13.  They

19  argue that because the Homeland Security Act assigns adjudicatory functions to USCIS and

20  enforcement and investigative functions to the Bureaus of Customs and Border Patrol (CBP) and

21  Immigration and Customs Enforcement (ICE), the Court should infer that *any* FDNS personnel

22  employed by USCIS are unlawfully diverting resources away from adjudications and to

23  investigations.  *See* Dkt. No. 59 at 10-11.  Plaintiffs rely on a document apparently obtained

24  through a FOIA request that they say shows USCIS employs 32 FDNS personnel as of February 1,

25  2022.  Dkt. No. 62-2, Ex. A at 283; s*ee* Dkt. No. 77 at 60:4-62:3.

26      USCIS responds that no statute or regulation prohibits the agency from employing FDNS

27  personnel, and that plaintiffs merely speculate that it has diverted adjudication resources to other

28  functions.  Moreover, USCIS observes that the Secretary of Homeland Security has delegated to

United States District Court
Northern District of California

19

USCIS the "[a]uthority to investigate alleged civil and criminal violations of the immigration laws, including but not limited to alleged fraud with respect to applications or determinations within [USCIS] and make recommendations for prosecutions, or other appropriate action when deemed advisable." Dkt. No. 60-1, Ex. 27 § II.(I) (DHS, Delegation No. 0150.1). USCIS is not authorized "to enforce immigration laws by inspection of aliens or vehicles, issuance or execution of warrants, detention or release of aliens on bond, removal of aliens from the United States, issuance of stays of removal, reinstatement of removal orders, or any other enforcement authority exclusively delegated to the Commissioner of CBP or the Assistant Secretary for ICE." *Id.* Plaintiffs do not respond directly to these arguments, and do not support their claim that USCIS, in fact, unlawfully diverts adjudication resources as opposed to merely employing FDNS personnel.

On this record, the Court concludes that plaintiffs have not shown that USCIS unlawfully diverted adjudication resources to other functions.

Second, plaintiffs argue that USCIS fails to properly track adjudication metrics. Dkt. No. 59 at 11. They argue that USCIS must track hours spent adjudicating Form I-526 petitions so that the agency can set appropriate fees to ensure petitions are timely adjudicated, in accordance with the directives and goals of Congress. *See* EB-5 Reform and Integrity Act of 2022, Pub. L. No. 117-103, 136 Stat. 49, 1103-04 § 106(b) (Mar. 15, 2022). Plaintiffs rely on a declaration obtained through other litigation[11] which indicates that the Investor Program Office does not track man-hours spent on each Form I-526 application, as other directorates within USCIS may do for other petitions. *See* Dkt. No. 29-1. From this, plaintiffs argue that "without [tracking] man hours, [USCIS] cannot calculate the actual cost of these adjudications. And without knowing the actual cost, it cannot determine an appropriate fee to cover the costs." Dkt. No. 62 at 14-15.

USCIS responds that it *does* track adjudication metrics, just not in the way plaintiffs prefer, and that no statute or regulation requires otherwise. Dkt. No. 60 at 13. USCIS explains that its processing times for Form I-526 petitions are calculated by determining the number of months that

---

[11] *Nadhar v. Renaud*, No. 21-275 (D. Ariz.)

United States District Court
Northern District of California

elapse for each petition during a reporting period, and then deriving the 80th completion percentile (i.e. 80% of petitions are completed in that amount of time). *See* Dkt. No. 56-1 ¶ 24. USCIS publicly reports these metrics. *See* Check Case Processing Times, USCIS, https://egov.uscis.gov/processing-times/ (last visited: March 31, 2023). Plaintiffs do not dispute USCIS's explanation of the metrics it reports.

As no statute or regulation requires USCIS to report adjudication metrics in the manner plaintiffs demand, the Court finds no support for plaintiffs' contention that USCIS's current reporting is unlawful.

Because plaintiffs failed to show any impropriety, the sixth *TRAC* factor does not weigh in their favor.

## IV.   CONCLUSION

The Court concludes that the first, third, fourth, and fifth *TRAC* factors weigh in favor of USCIS; the second factor weighs in favor of plaintiffs; and the sixth factor does not impact the Court's analysis. On this summary judgment record, the Court concludes that the agency's delay is not unreasonable as a matter of law and that plaintiffs are not entitled to the relief they seek under the APA. Accordingly, the Court grants USCIS's motion for summary judgment and denies plaintiffs' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: March 31, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge